27 So.2d 195

**HATCH v. VANDIVER et al.**

**3 Div. 461.**

Supreme Court of Alabama.

Aug. 2, 1946.

212

Edwin I. Hatch, of Montgomery, for appellant.

Jack Crenshaw and Ball & Ball, all of Montgomery, for appellees.

GARDNER, Chief Justice.

The bill in this cause was filed by all of the adult beneficiaries of the will of Sallie P. Vandiver, as well as the will of Willie V. Whitfield, seeking approval of a plan concerning the described properties of the two estates.

There were involved the interest of minors, born and unborn, which would be affected by this plan. They were by approved methods made parties defendant to the bill

and a guardian ad litem duly appointed to represent their interest.

From the decree giving full approval to the plan as outlined in the bill the guardian ad litem has prosecuted this appeal.

As to the will of Sallie P. Vandiver, the provisions here pertinent creating a trust for the purposes therein named are to be found in items 15 and 16, which will appear in the report of the case. As to the Willie V. Whitfield will, the trust feature appearing in items 13 and 14 are the important provisions of the will and will likewise appear in the report of the case. The decree giving full approval to the plan outlined in the bill will also appear in the report of the case.

It is of course the duty of the court in dealing with trust property to see to it that the trust be so administered as to protect all classes of beneficiaries, and if a difference of interest exists among the classes of beneficiaries the court should see to it that the rights of all are taken into consideration.

Under the terms of the Vandiver will Willie V. Whitfield and her brother R. M. Vandiver were residuary legatees, but by conveyance from her brother Willie V. Whitfield became the owner of the residue of the Vandiver estate subject to the two trusts appearing in items 15 and 16 to which reference has been made. As will be observed the trusts appearing in item 15 of the Vandiver will establishes an annuity of $1,800 payable to Annie V. Vandiver for her life, and in item 16 is an annuity of $1,500 to Clara Park for her life, with provision for a principal amount of $15,000 to her descendants, if any, of which there is at present but one, Ann Yuska. Subject to these two trusts was farm property which has been sold by order of the court, proceeds of which are held by the trustee subject to court orders, what are known as the "Vandiver" stores, on Commerce street in the city of Montgomery, and an office building known as the "Vandiver building", in the city of Montgomery, likewise located on Commerce street.

During the life of Willie V. Whitfield she executed two mortgages. One of these mortgages was on her equity in the Van-diver properties mentioned above, subordinate of course to the two trusts created in the will; this mortgage is now held by Liberty National Life Insurance Company with a principal balance of a sum in excess of $98,000 payable $1,000 per month, but upon which the monthly payments have not been made for a considerable time. Foreclosure of this mortgage has been threatened. Willie V. Whitfield also in her lifetime executed a mortgage on the property known as the "Bishop Parker" building, on Commerce street in the city of Montgomery, erected on land bought by her from third parties and not inherited under the Vandiver will. The principal balance on this mortgage is in excess of $37,000 having been renewed from year to year without principal reduction during recent years. Both mortgages were debts of Willie V. Whitfield at the time of her death.

It will appear from examination of items 13 and 14 of the will of Willie V. Whitfield that she also establishes two trusts of $25,000 each for her two sets of grandchildren, namely, the children of her son, L. B. Whitfield, Jr., and her daughter Katherine W. Wolf. Mrs. Whitfield's son and daughter are the residuary legatees of her will. There have never been sufficient funds or property with which to set up these trusts.

The evidence is without dispute that as an office building the property known as the "Vandiver building" is more or less obsolete and would require the expenditure of a considerable sum for its improvement as a modern building. Furthermore, the present expense of upkeep, such as the operation of the elevator, the employment of janitor and maids, as well as necessary repairs have greatly reduced the net income from the property. Indeed the evidence is uncontradicted that the net income from the Vandiver property after the payment of the $3,300 annuities, plus the net income from the Whitfield property after the payment of interest, has not sufficed to keep up the $1,000 monthly payments due to the holder of the mortgage on the Vandiver building. The bill states, and the proof sustains the averment, that a necessity exists for the ascertainment of some plan which will prevent the foreclosure of the mortgage and the consequent loss to the Whitfield estate

of the equity in the Vandiver property. What is proposed in the bill and supported by the proof is that the Vandiver building be sold and that the proceeds of the sale, together with the proceeds from the sale of the farm and such additional funds as may be necessary to pay off the mortgage on the equity of Willie V. Whitfield on the Vandiver properties, and the mortgage on the Bishop Parker building, and then to substitute the Bishop Parker building for the Vandiver building in the Vandiver trusts. The plan also provides for life insurance and other matters of detail which we consider as administrative in character and need no discussion here.

■ The question therefore here presented is whether the proposed plan is for the benefit of the minors interested. As to the Vandiver will there are no minors now living who are concerned. But if at the death of Clara Park her adult daughter, Ann Yuska, at present without children, should not be living but should leave children then living, these children now unborn would be entitled to $15,000. As to these unborn children the court should see as far as possible that there be some assurance there will be funds or property from which funds could be raised to the extent of $15,-000. We are persuaded that the evidence justifies the conclusion that the value of the Vandiver stores plus the acquisition of the Bishop Parker building would amply provide the amount necessary to produce the $15,000. But the plan also contains, as additional security and in abundance of precaution, a provision for a life insurance policy on Clara Park to protect that principal sum upon her death. At the death of Clara Park such amount would go to her descendants, if any, and if none would revert back into the residue of the Vandiver estate. A reading of this record justifies the conclusion that the rights of any unborn descendants of Clara Park are amply protected by the plan outlined and approved by the court.

The proof further discloses that a purchaser has been obtained who is willing to pay the cash price of $125,000. for the Vandiver building, and that this sum is reasonable and the best price obtainable.

■ From a trust standpoint the evidence further discloses that the Bishop Parker building is a more desirable investment than the Vandiver building because of the condition of the latter, as well as the expense of its operation. Indeed, the proof discloses that there have been years when the Vandiver building was operated at a loss. On the other hand the Bishop Parker building involves no operation of a business but entails only the rental of a building which is located in a part of the business district where store buildings are in constant demand. The Bishop Parker building is also advantageously located in reference to other property of the estate as disclosed by the proof, details of which are unnecessary here to relate.

■ As to the minors who are beneficiaries of the Willie V. Whitfield estate, it is of course to their benefit that her debts be paid and that the funds which otherwise would go to the payment of interest on the mortgage be made available to apply on the trusts in the Whitfield will. It is abundantly clear from the proof there are not now, and indeed there is no prospect of such, funds from income to pay off these mortgages, and it is only by a sale of some of the property that the rest of it can be saved. The saving of a large amount of interest will enable the minors involved in the Whitfield estate not only to benefit by saving of the rest of the property from loss by foreclosure, but will also mean there will be funds to apply for their benefit under the two trusts set up in the Whitfield will. And we think it clear enough that the benefit to the Whitfield beneficiaries will not be at the expense of the Vandiver beneficiaries. This because the removal of the mortgage on the Bishop Parker building and the substitution of that building for the Vandiver office building will, we judge from the undisputed proof, merely result in the substitution of a modern store building for a more or less obsolete office building with a net income closely equivalent to that of the latter but without the risk attendant upon its operation. As we read the record the Vandiver beneficiaries will likewise be equally benefited.

■ Upon a careful consideration of the proof we are fully persuaded that the pro-

posed plan approved by the trial court is to the best interest of these minors, as well as any child or children yet unborn. The decree appealed from should accordingly be here affirmed. It is so ordered.

Affirmed.

FOSTER, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.